**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE SHAWN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRONTLINE TECHNOLOGIES GROUP LLC d/b/a FRONTLINE EDUCATION,<br><br>Defendant. | Case No.<br><br>**COMPLAINT—CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Jane Shawn ("Plaintiff"), individually and on behalf of the nationwide Class and the Montana Subclass defined below, brings this Class Action Complaint against Defendant Frontline Technologies Group LLC d/b/a Frontline Education ("Frontline" or "Defendant") for negligence and for violation of the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-101 *et seq.* (the "MCPA"). Plaintiff alleges the following on personal knowledge as to herself and her own acts and, as to all other matters, on information and belief based on the investigation of counsel, including review of Frontline's public statements, public reporting, and complaints already filed against Frontline.

## NATURE OF THE ACTION

1. Frontline is a Pennsylvania software company that sells cloud-based human resources, payroll, absence management, applicant tracking, student health, and special education software to thousands of K-12 school districts. To perform that work, Frontline collects and stores the most sensitive personal information of school district employees, including their names, Social Security numbers, home addresses, and email addresses.

2. On or about August 14, 2026, Frontline identified that an unauthorized party had exploited a vulnerability in a third-party software product that Frontline uses and had accessed a portion of Frontline's computing environment, where it obtained the personal information of school district employees across the country (the "Data Breach"). Reporting indicates that the Data Breach affected personnel data from school districts nationwide, and on October 27, 2026, the *Helena Independent Record* reported that the personal information of around 2,000 Helena Public Schools employees was exposed.

3. Frontline did not begin notifying its district customers until on or about October 1, 2026, nearly seven weeks after it identified the vulnerability. Frontline has said that notices to affected individuals will follow only after that. Montana law requires a business that maintains another's computerized personal information to notify the owner of that information "immediately following discovery" of a breach. Mont. Code Ann. § 30-14-1704(2).

4. Plaintiff and the members of the Class did not choose Frontline. Their employers did. But they entrusted their Social Security numbers and other personal information to be held by Frontline, and Frontline took that information knowing that it was responsible for protecting it. Frontline failed to do so by, among other things, failing to timely identify and remediate a known category of risk in the third-party software it relied on, failing to limit and segment the data exposed through that software, retaining data it no longer needed, and failing to promptly notify those affected.

5. The MCPA declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103. In *In re Snowflake, Inc., Data Security Breach Litigation*, the United States District Court for the District of Montana sustained an MCPA claim by consumers whose personal information was stolen from a cloud data provider, holding

that allegations that the provider failed to "implement industry standards as a data cloud service provider" in protecting consumers' personal information "establish an unfair act at the motion to dismiss stage." *In re Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-md-03126-BMM, Doc. 591, slip op. at 29 (D. Mont. Oct. 28, 2025) ("*Snowflake Order*"). The court further held that consumers who did not buy from the defendant directly may nonetheless be "consumers" of its services "through the intermediary" that did. *Id.* at 27. The court likewise sustained the consumers' negligence claims against the data cloud provider, holding that they adequately alleged duty, breach, causation, and damages, and that the economic loss doctrine did not bar them. *Id.* at 18-25.

6. Plaintiff asserts two claims. Count I, for negligence, is brought on behalf of a nationwide Class of persons whose personal information was exposed in the Data Breach. Count II, under the MCPA, is brought on behalf of a subclass of Montana residents. Plaintiff reserves the right to amend this Complaint to add claims, parties, and classes or subclasses as investigation and discovery warrant.

## PARTIES

7. Plaintiff Jane Shawn is a natural person, a citizen of the State of Montana, and a resident of Helena, Montana. Plaintiff is a current employee of the Helena Public School District (the "District"), which uses Frontline's software and services. She is also President of the Helena Education Association.

8. Defendant Frontline Technologies Group LLC d/b/a Frontline Education is a Delaware limited liability company with its principal place of business at 550 E. Swedesford Road, Suite 360, Wayne, Pennsylvania 19087. For purposes of 28 U.S.C. § 1332(d), Frontline is a citizen of Delaware and Pennsylvania. *Id.* § 1332(d)(10). On information and belief, Frontline was

acquired in or about October 2022 by Roper Technologies, Inc. in a transaction reported to value Frontline at approximately $3.7 billion.

**JURISDICTION AND VENUE**

9. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The proposed Class has more than 100 members; Plaintiff and members of the Class are citizens of States other than Delaware and Pennsylvania, including Montana, while Frontline is a citizen of Delaware and Pennsylvania, so minimal diversity exists; and, on information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, when the claims of all Class Members are aggregated. That amount is based on the number of persons affected by the Data Breach, which Frontline has not disclosed but which, on information and belief, numbers in the many thousands given that Frontline serves thousands of school districts and that a single district has reported 1,210 affected employees; the damages and costs of mitigation sustained by each of them; the value of the injunctive relief sought; and, as to the Montana Subclass, the greater of actual loss or $500 per member recoverable under Mont. Code Ann. § 30-14-133(1)(a), the discretionary multiplication of damages available under that statute, and attorneys' fees recoverable under § 30-14-133(3).

10. On information and belief, no exception to CAFA jurisdiction applies. Frontline is a citizen of Pennsylvania, but the Class is nationwide and fewer than two-thirds of its members are citizens of Pennsylvania. *See* 28 U.S.C. § 1332(d)(3)-(4).

11. This Court has personal jurisdiction over Frontline because Frontline is headquartered and maintains its principal place of business in this District, and because the acts and omissions alleged here, including Frontline's data security, vulnerability management, and notification decisions, emanated from this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Frontline resides in this District and a substantial part of the events and omissions giving rise to the claims occurred here.

## FACTUAL ALLEGATIONS

13. Frontline markets an integrated suite of software to school districts that spans human capital management (including recruiting, hiring, onboarding, payroll, absence and time tracking, and professional development), student management (including special education and school health records), and business operations. Frontline represents that more than 7,000 school districts use its absence and substitute management software alone.

14. Frontline receives from its district customers information about their teachers and other school employees. By Frontline's own account, that information includes names, addresses, email addresses, dates of birth, and Social Security numbers. Frontline also receives and stores information about job applicants and former employees.

15. Montana school districts and other Montana educational organizations, including Helena Public Schools and the District, use Frontline's products to manage their workforces. Employees of those districts must give their employers their Social Security numbers and other personal information as a condition of employment, and the districts in turn transmit that information to Frontline, which stores and processes it.

16. Frontline's products are not used by districts alone. On information and belief, school district employees interact with Frontline's products directly and for personal purposes, including to submit and manage absences and leave, to access employment and payroll-related records and onboarding materials, and to complete professional development, and Frontline delivers those services to employees as individuals.

17. Frontline understands that it is the custodian of this information. Its published Privacy Policy states that Frontline "maintains strict administrative, technical and physical procedures to protect information stored in our servers"; that "[w]e store and process data in accordance with industry best practices"; that "[w]e will conduct periodic risk assessments and remediate any identified security vulnerabilities in a timely manner"; and that "[w]e also have a written incident response plan," which includes "prompt notification of the districts and educators" in the event of a security or privacy breach of protected information. *See* Frontline Education, Privacy Policy, https://www.frontlineeducation.com/pages/privacy-policy/ (as displayed October 27, 2026). On information and belief, those statements, or materially similar statements, were in effect before the Data Breach.

18. Frontline had every reason to know that it was a target. School districts and the vendors that serve them have been the repeated targets of cyberattacks that expose the personal information of educators and students. For example, the K-12 software provider PowerSchool disclosed that a December 28, 2024 breach exposed the personal information of students and educators at districts nationwide, and Helena Public Schools was among the districts that warned families about it.

19. The Federal Trade Commission has long advised businesses that hold personal information to keep only what they need, to encrypt it, to understand and monitor their systems for vulnerabilities, to apply updates and patches promptly, to segment networks, to watch for unusual data transfers, to verify the security of their service providers, and to have a response plan ready. *See, e.g.*, Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (2016); Fed. Trade Comm'n, *Start with Security: A Guide for Business*. The NIST Cybersecurity Framework likewise identifies identity management, data protection, platform security, continuous

monitoring, and incident communication as baseline practices for organizations that hold sensitive data.

20. On August 14, 2026, according to Frontline's own notification letters, Frontline's "security team identified a vulnerability in a third-party software product we use that allowed unauthorized access to a portion of the environment." Frontline has not disclosed when the unauthorized access began, how long it went undetected, or which third-party product was involved.

21. Through that access, the unauthorized party obtained files containing the personal information of school district employees. Frontline has acknowledged that the affected information includes full names, Social Security numbers, physical mailing addresses, and email addresses. At least one school district has reported that the affected data covers current and former employees and applicants and "impacted personnel data across multiple school districts nationwide."

22. Frontline has stated that the affected data relates to two of its products, Frontline Central and School Health Management. Reports indicate that Frontline remediated the vulnerability, engaged an independent cybersecurity firm, and notified law enforcement.

23. Frontline did not publicly announce the Data Breach. On or about October 1, 2026, nearly seven weeks after it identified the vulnerability, Frontline began notifying district customers. The incident first became public on October 2, 2026, when BleepingComputer reported on a notice Frontline sent to one district stating that the information of 1,210 of that district's employees had been compromised.

24. Frontline told its districts that it would notify affected individuals on the districts' behalf unless a district opted out by October 16, 2026, and that it would offer affected individuals two years of credit monitoring and identity protection through TransUnion. One district informed

its employees that individual notices from Frontline would not begin until on or about October 17, 2026, more than nine weeks after Frontline identified the vulnerability. Frontline has not publicly disclosed how many districts or individuals were affected.

25. The Data Breach reached Montana. On October 27, 2026, the *Helena Independent Record* reported that the personal information of around 2,000 Helena Public Schools employees was exposed in the Data Breach. Mikayla Melo, *Helena Public Schools employees' personal data exposed in software vendor's data breach*, Helena Indep. Rec. (Oct. 27, 2026). On information and belief, employees and former employees of other Montana school districts and educational organizations that use Frontline's products were also affected.

26. Plaintiff learned of the Data Breach when reading about it in the Helena Independent Record and receiving a notice from the District. Plaintiff's Social Security number and other personal information were provided to the District as a condition of her employment and, on information and belief, were stored by Frontline and were among the information accessed in the Data Breach.

27. Since learning of the Data Breach, Plaintiff has spent time and effort to protect herself, including researching the breach, and taking other preventive measures including reaching out to Frontline Education at the number provided on the breach notice. Plaintiff has suffered anxiety and frustration about the misuse of her information and expects to continue to spend time and money protecting herself.

28. The Data Breach was the foreseeable result of Frontline's failure to employ reasonable data security. On information and belief, Frontline failed to:

(a) timely identify and remediate vulnerabilities in the third-party software that it used to operate and connect to systems holding employee personal information, including by applying available updates and patches;

(b) segment and restrict its systems so that a single vulnerable software product could not expose personnel data belonging to many districts;

(c) encrypt Social Security numbers and other sensitive information at rest and in transit, and require multi-factor authentication and least-privilege access to it;

(d) adequately monitor its environment for unauthorized access and for large transfers of data, so that the intrusion would be detected and stopped promptly;

(e) adequately assess, oversee, and verify the security of the third-party vendors and software on which it relied;

(f) delete personal information of former employees and applicants that it no longer needed for any legitimate purpose; and

(g) promptly notify its district customers and the affected individuals once it identified the vulnerability.

29. Social Security numbers are uniquely valuable to criminals. Unlike a credit card number, a Social Security number cannot readily be changed, and combined with a name, address, and email address it allows a thief to open credit accounts, file fraudulent tax returns, obtain government benefits, take over existing accounts, and impersonate the victim. Criminals who obtain such data frequently hold it for months or years before using it, and sell and resell it on criminal marketplaces.

30. Frontline's offer of two years of credit monitoring is an acknowledgment that the exposed information puts its victims at risk of misuse. It is inadequate in duration, because the risk to victims continues for far longer than two years.

31. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer losses of money and property and other injury, including:

(a) the diminution in value of their personal information, which has an ascertainable value in legitimate and illicit markets and which was taken without compensation; (b) out-of-pocket costs of preventing, detecting, and recovering from identity theft and fraud, including the cost of credit monitoring, credit freezes, and identity protection beyond the limited period Frontline offered; (c) the value of time and wages lost in addressing the Data Breach and its consequences; (d) the loss of the benefit of the data protection that Frontline promised and that was a component of the services provided to them; (e) the loss of control over the use of their identity and personal information; (f) the substantial and imminent risk of identity theft and fraud and the continuing costs of guarding against it; and (g) anxiety, emotional distress, and invasion of privacy. Because Frontline continues to hold their information, they also face an ongoing risk of future breaches unless Frontline's security is corrected.

32. The District of Montana has recognized that allegations of a market for stolen personal information plausibly support injury from the diminution in value of that information, that the imminent risk of identity theft is itself an injury, and that such injuries support damages in negligence and ascertainable loss under the MCPA. *Snowflake Order* at 9-12, 24-25, 31.

**CLASS ACTION ALLEGATIONS**

33. Plaintiff brings this action individually and as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of the following class (the "Class"):

> All natural persons residing in the United States whose personal information was accessed and/or acquired by an unauthorized party in the Data Breach, including current and former employees and applicants of school districts and other educational organizations that use Frontline's products.

34. Plaintiff also brings Count II on behalf of the following subclass of the Class (the "Montana Subclass"):

> All natural persons residing in the State of Montana whose personal information was accessed and/or acquired by an unauthorized party in the Data Breach, including current and former employees and applicants of Montana school districts and other Montana educational organizations that use Frontline's products.

35. Plaintiff reserves the right to amend the definitions of the Class and the Montana Subclass, to add classes or subclasses, and to assert additional claims. Where this Complaint refers to "Class Members," it includes members of the Montana Subclass, and "Subclass Members" are the members of the Montana Subclass.

36. Excluded from the Class and the Montana Subclass are Frontline, its officers, directors, affiliates, and employees, the judicial officers assigned to this case and their immediate families, and counsel for Plaintiff.

37. **Numerosity.** The Class and the Montana Subclass are each so numerous that joinder of all members is impracticable. Frontline serves thousands of school districts nationwide, and the Data Breach reportedly affected personnel data from districts across the country, including 1,210 employees of a single district and around 2,000 employees of one Montana district, Helena Public Schools. On information and belief, additional Montana districts and educational organizations use the affected products. Class Members can be identified from Frontline's and its district customers' records, and notice can be given directly.

38. **Commonality.** Common questions of law and fact exist, and predominate over any individual questions, including: (a) whether Frontline owed a duty to Class Members to exercise reasonable care in collecting, storing, and safeguarding their personal information; (b) whether Frontline failed to implement and maintain reasonable security procedures and practices appropriate to the information it held; (c) whether Frontline failed to timely identify and remediate

the vulnerability exploited in the Data Breach; (d) whether Frontline failed to promptly notify its customers and affected individuals; (e) whether Frontline's conduct caused the Data Breach and Class Members' injuries; (f) whether Class Members are entitled to damages and injunctive relief; and, as to the Montana Subclass, (g) whether Frontline's conduct was an unfair or deceptive act or practice in trade or commerce under Mont. Code Ann. § 30-14-103; (h) whether Subclass Members are consumers under Mont. Code Ann. § 30-14-102(1); and (i) the nature and measure of relief to which Subclass Members are entitled under Mont. Code Ann. § 30-14-133.

39. **Typicality.** Plaintiff's claims are typical of the claims of the Class and the Montana Subclass. Plaintiff, like every Class Member, had her personal information held by Frontline and exposed in the Data Breach, and her claims arise from the same conduct and rest on the same legal theories.

40. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class and the Montana Subclass. Her interests are aligned with and not antagonistic to those of the Class, and she has retained counsel experienced in data breach and complex class litigation, including *In re Snowflake, Inc., Data Security Breach Litigation*, MDL No. 3126 (D. Mont.).

41. **Predominance and Superiority.** Common questions predominate because Frontline's conduct toward all Class Members was uniform and the Data Breach affected them in the same way. A class action is superior to other methods of adjudication because each Class Member's individual recovery is small relative to the cost of litigating against a well-funded defendant, because the MCPA's fee provision is limited, and because a single proceeding will avoid inconsistent results. The elements of a claim for negligence arising from a data breach are materially the same under the law of every State, and the claim turns on Frontline's own conduct, which was directed from this District.

42. **Rule 23(b)(2).** Frontline has acted or refused to act on grounds that apply generally to the Class and, on information and belief, continues to hold Class Members' information, so that final injunctive and equitable relief, including under Mont. Code Ann. § 30-14-133(1)(a) as to the Montana Subclass, is appropriate respecting the Class and the Montana Subclass as a whole.

43. Count II is the only claim subject to the MCPA's limitation on class actions; Count I is a common-law claim to which no such limitation applies. The MCPA's private right of action provides that a consumer "may bring an individual action but not a class action." Mont. Code Ann. § 30-14-133(1)(a). That limitation does not apply in this Court. Rule 23 of the Federal Rules of Civil Procedure governs whether a claim may proceed as a class action in federal court, and a state statute may not displace it. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). The MCPA claim was likewise pleaded in a representative class action complaint in *In re Snowflake* and survived a motion to dismiss. *Snowflake Order* at 25-31.

## COUNT I
## NEGLIGENCE
## (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

44. Plaintiff realleges and incorporates by reference all preceding paragraphs.

45. Frontline collected and stored the personal information of Plaintiff and Class Members, including their Social Security numbers, in the ordinary course of its business and for its own commercial benefit. Frontline had exclusive control over the systems in which that information was held. Plaintiff and Class Members entrusted their information to Frontline, through their employers, on the understanding that Frontline would safeguard it, and they had no ability to protect it once it was in Frontline's systems.

46. Frontline knew the sensitivity of that information and the consequences of its unauthorized disclosure. Frontline knew that vendors serving school districts have been repeated

targets of cyberattacks, and it knew that Plaintiff and Class Members were the foreseeable and probable victims of inadequate data security. It was therefore reasonably foreseeable that a failure to employ reasonable security, including a failure to identify and remediate vulnerabilities in the third-party software on which Frontline relied, would result in injury to Plaintiff and Class Members.

47. Frontline therefore owed Plaintiff and Class Members a duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, and deleting their personal information. Under Montana law, "[a]t the most basic level, we all share the common law duty to exercise the level of care that a reasonable and prudent person would under the same circumstances," and whether a duty exists depends on public policy and on whether the defendant could have foreseen that its conduct could result in injury to the plaintiff. *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶¶ 16-17, 342 Mont. 335, 181 P.3d 601. The analysis of duty "turns primarily on foreseeability." *Poole ex rel. Meyer v. Poole*, 2000 MT 117, 299 Mont. 435, 1 P.3d 936, 939. Courts applying Montana law have held that a plaintiff states a negligence claim against a data custodian that allegedly fails to safeguard the personal information in its care. *Snowflake Order* at 19-21 (duty adequately alleged where the risk of harm to data was foreseeable and the defendant allegedly failed to implement available security measures); *Teeter v. Easterseals-Goodwill N. Rocky Mountain, Inc.*, No. 4:22-cv-00096-BMM, 2023 WL 2330241 (D. Mont. Mar. 2, 2023) (denying motion to dismiss common-law negligence claim arising from a data breach); *see also In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1325 (N.D. Ga. 2019) (duty to safeguard personal information where the defendant "knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures"). Pennsylvania law is in accord. *See Dittman v.*

*UPMC*, 196 A.3d 1036 (Pa. 2018) (recognizing a common-law duty of reasonable care in collecting and storing employees' personal and financial information on computer systems).

48. Frontline's duty arose from its own affirmative conduct and its relationship to Plaintiff and Class Members. Frontline chose to collect and store their Social Security numbers and other personal information in its computing environment, and it represented that it "maintains strict administrative, technical and physical procedures to protect information stored in our servers," conducts periodic risk assessments, remediates identified vulnerabilities in a timely manner, and provides "prompt notification" of a breach. Having undertaken to protect that information, Frontline was bound to do so with reasonable care.

49. Frontline also owed Plaintiff and Class Members a duty to notify them, and to notify the districts that were the means of notifying them, within a reasonable time after discovering that their information had been compromised, so that they could protect themselves. Montana's requirement that a business that maintains another's computerized personal information notify the owner "immediately following discovery" of a breach, Mont. Code Ann. § 30-14-1704(2), and the comparable laws of other States, reflect the public policy that informs what notice is reasonable. Plaintiff does not rely on that statute, or on the Federal Trade Commission Act, as an independent source of a private right of action. Those authorities, together with FTC guidance, the NIST Cybersecurity Framework, and other industry standards, inform the standard of care that Frontline's duty required.

50. Frontline breached its duty by failing to exercise reasonable care in safeguarding Plaintiff's and Class Members' personal information, including through the failures described in paragraph 28 above, and by delaying notice of the Data Breach for approximately seven weeks after it identified the vulnerability. The standard of care, its source in industry practice and

Frontline's own representations, and the facts showing that Frontline fell short of it are alleged above. *See Snowflake Order* at 21-22 (breach adequately alleged where the plaintiffs identified the industry standard and specific security measures the defendant allegedly failed to take).

51. Frontline's breach was a cause-in-fact and the proximate cause of the Data Breach and of Plaintiff's and Class Members' injuries. But for Frontline's failure to employ reasonable security, the unauthorized party would not have been able to access and acquire the personal information of Plaintiff and Class Members. The criminal act of the unauthorized party does not break the chain of causation, because that act was the very risk that made Frontline's conduct negligent and was reasonably foreseeable to Frontline. *See Fisher*, 2008 MT 105, ¶ 40; *Snowflake Order* at 22-23 (the foreseeable acts of third-party threat actors "do not cut off" a defendant's liability).

52. As a direct and proximate result of Frontline's negligence, Plaintiff and Class Members have suffered and will continue to suffer the injuries and damages described in paragraph 31 above, including diminution in the value of their personal information, the cost and value of time spent responding to the Data Breach, out-of-pocket costs of protecting themselves, loss of control over the use of their identity, the substantial and imminent risk of identity theft and fraud, and anxiety and emotional distress. The District of Montana has held that allegations of this kind sufficiently plead damages in a data-breach negligence claim. *Snowflake Order* at 24.

53. The economic loss doctrine does not bar Count I. Plaintiff and Class Members have no contract with Frontline, and Frontline's duty to use reasonable care in safeguarding their information exists independently of any contract. Plaintiff and Class Members have also suffered non-economic harms, including the loss of use and control of their identity, lost time, the imminent risk of identity theft, and emotional distress. *Snowflake Order* at 24-25 (economic loss doctrine

did not preclude data-breach negligence claims on these allegations); *see also Dittman*, 196 A.3d 1036 (economic loss doctrine did not bar employees' negligence claim for breach of the common-law duty to safeguard their personal information).

54. Frontline's negligence is continuing, in that, on information and belief, it still holds Plaintiff's and Class Members' personal information in systems that have not been shown to be secure. Plaintiff and Class Members are therefore entitled not only to damages in an amount to be proved at trial but also to injunctive relief requiring Frontline to strengthen its data security, to delete information it does not need, and to provide extended credit monitoring and identity protection at its expense.

## COUNT II

## VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT MONT. CODE ANN. § 30-14-101 *ET SEQ.* (ON BEHALF OF PLAINTIFF AND THE MONTANA SUBCLASS)

55. Plaintiff realleges and incorporates by reference all preceding paragraphs.

56. The MCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code Ann. § 30-14-103. "Trade" and "commerce" include "the advertising, offering for sale, sale, or distribution of any services" and "any trade or commerce directly or indirectly affecting the people of this state." *Id.* § 30-14-102(8)(a).

57. To state a claim under the MCPA, a plaintiff must allege that (1) the plaintiff was a consumer of the defendant's services, (2) the defendant employed an unfair or deceptive act or practice in the conduct of trade or commerce with the plaintiff, (3) causation, and (4) ascertainable loss. *Snowflake Order* at 25-26 (citing *Kostelecky v. Peas in a Pod LLC*, 2022 MT 195, 518 P.3d 840, 861). Plaintiff and the Montana Subclass satisfy each element.

58. **Consumers.** The MCPA defines a "consumer" as "a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes." Mont. Code Ann. § 30-14-102(1). A plaintiff need not buy directly from the defendant; the plaintiff must have "purchased or leased some product or service which the defendant played a role in providing." *Snowflake Order* at 26 (citation omitted).

59. Plaintiff and the Montana Subclass Members obtained, through their employment and in exchange for their labor and their personal information, workforce, payroll, absence, leave, and related services that Frontline played a role in providing, and they used those services for personal purposes. Frontline could not have provided those services, or promised to protect the information needed to provide them, without receiving Subclass Members' personal information, and Frontline's districts paid Frontline fees that were calculated, in part, to cover the security needed to protect that information. As in *Snowflake*, Subclass Members are "consumers" of Frontline's services "through the intermediary," here their employers. *Snowflake Order* at 27.

60. **Unfair acts or practices.** An act is unfair under Montana law when it "offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Snowflake Order* at 27 (quoting *Rohrer v. Knudson*, 2009 MT 35, 349 Mont. 197, 203 P.3d 759, 764). Whether conduct is unfair is generally a question for the jury. *Id.* at 28. Montana construes § 30-14-103 with "due consideration and weight" to the interpretations of the Federal Trade Commission and the federal courts under Section 5 of the FTC Act. Mont. Code Ann. § 30-14-104(1); *Snowflake Order* at 28 (citing *Anderson v. ReconTrust Co.*, 2017 MT 313, 407 P.3d 692, 700).

61. The FTC has treated a business's failure to employ reasonable and appropriate measures to protect consumers' personal information as an unfair practice under 15 U.S.C. § 45(a),

including against a cloud service provider whose security failures led to a data breach. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015) (holding that the FTC may pursue inadequate data security as an unfair practice under Section 5); *In re Blackbaud, Inc.*, No. C-4804 (F.T.C. May 2024); *Snowflake Order* at 28-29.

62. Frontline engaged in unfair acts and practices by, among other things, the failures described in paragraph 28 above and by delaying notice of the Data Breach to its customers and to affected persons for approximately seven weeks, contrary to Mont. Code Ann. § 30-14-1704(2) and to its own representation that it would provide "prompt notification." Montana's requirement that a business that maintains another's personal information notify the owner "immediately following discovery" of a breach reflects established public policy of this State, and a vendor that holds the Social Security numbers of Montana school employees, fails to protect them with reasonable security, and then waits weeks to tell anyone acts in a manner that is oppressive, unscrupulous, and substantially injurious to consumers.

63. Frontline occupies the same position as the cloud service provider in *In re Snowflake*. It is a service provider that holds personal information on behalf of intermediaries that deal directly with consumers, and it controls the security of the environment in which that information is stored. The *Snowflake* court held that allegations of a failure to implement industry-standard protections "as a data cloud service provider" "establish an unfair act at the motion to dismiss stage." *Snowflake Order* at 29. The same is true here.

64. **Deceptive acts or practices, in the alternative.** An act is deceptive when it is likely to mislead consumers, and false representations about the characteristics, use, or benefits of what is being sold may be deceptive. *Snowflake Order* at 27-28. Frontline represented that it maintains "strict administrative, technical and physical procedures to protect information stored in

our servers," stores and processes data "in accordance with industry best practices," conducts periodic risk assessments and timely remediates identified vulnerabilities, and maintains a written incident response plan with "prompt notification of the districts and educators." Frontline did not do these things, and it did not disclose that its security was inadequate. Those representations and omissions were likely to mislead Subclass Members and their employers. Plaintiff pleads the deceptive-practice theory in the alternative. The unfair-practice theory independently suffices, and it does not depend on any Subclass Member's awareness of or reliance on Frontline's statements, because an unfair act that causes injury is sufficient to state a claim. *Snowflake Order* at 29-31.

65. **Causation.** Frontline's unfair acts and practices caused Plaintiff's and the Montana Subclass Members' injuries. Had Frontline implemented reasonable security measures, promptly remediated the vulnerability, minimized and segmented the data it held, and promptly given notice, the Data Breach would have been prevented or its consequences substantially reduced, and Subclass Members would not have been exposed to the harms described above. The *Snowflake* court held that allegations that a defendant's unfair failure to implement adequate security measures caused injury are sufficient to establish causation under the MCPA at the pleading stage. *Snowflake Order* at 31.

66. **Ascertainable loss.** Plaintiff and the Montana Subclass Members have suffered ascertainable losses of money and property as a direct result of Frontline's unfair acts and practices, including the losses identified in paragraph 31 above.

67. Under Mont. Code Ann. § 30-14-133(1)(a), Plaintiff and each Montana Subclass Member are entitled to recover the greater of their ascertainable loss of money or property or $500; up to three times that amount in the Court's discretion where actual damages do not exceed $100,000; and any other equitable relief that the Court considers necessary or proper, including an

injunction requiring Frontline to implement and maintain reasonable security measures, to delete personal information it no longer needs, and to provide meaningful notice and extended credit monitoring and identity protection. Plaintiff and the Montana Subclass are also entitled to reasonable attorneys' fees under § 30-14-133(3). Plaintiff does not seek punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class and the Montana Subclass, respectfully requests that the Court enter judgment in her favor and against Frontline and award the following relief:

(a) An order certifying the Class and the Montana Subclass under Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Class and the Montana Subclass, and appointing her undersigned counsel as class counsel;

(b) On Count I, an award to Plaintiff and each Class Member of compensatory damages in an amount to be proved at trial;

(c) On Count II, an award to Plaintiff and each Montana Subclass Member of the greater of their ascertainable loss of money or property or $500, as provided by Mont. Code Ann. § 30-14-133(1)(a);

(d) On Count II, an award of up to three times the money damages sustained, in the Court's discretion, as provided by Mont. Code Ann. § 30-14-133(1)(a);

(e) Equitable and injunctive relief, including under Mont. Code Ann. § 30-14-133(1)(a) as to the Montana Subclass, including an order requiring Frontline to: (i) implement and maintain a comprehensive information security program; (ii) encrypt sensitive personal information at rest and in transit and require multi-factor authentication; (iii) segment its systems and data; (iv) implement a vulnerability

and patch management program that includes the timely remediation of vulnerabilities in third-party software and oversight of third-party vendors; (v) retain independent third-party assessors to test and audit its security on a periodic basis; (vi) delete personal information it no longer needs for a legitimate purpose; (vii) adopt incident response and notification procedures that ensure prompt notice to customers and affected individuals; and (viii) provide extended credit monitoring and identity protection to Class Members at Frontline's expense;

(f) An award of reasonable attorneys' fees and costs, including under Mont. Code Ann. § 30-14-133(3) on Count II, and as otherwise permitted by law;

(g) Pre-judgment and post-judgment interest as permitted by law; and

(h) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 6, 2026

Respectfully submitted,

*/s/ Andrew W. Ferich*

Andrew W. Ferich (PA I.D. 313696)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Rd., Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
Email: aferich@ahdootwolfson.com

John C. Heenan (*pro hac vice* forthcoming)
**HEENAN & COOK, PLLC**
2224 Montana Ave.
Billings, Montana 59101
Telephone: (406) 697-0792
Email: john@lawmontana.com

Raph Graybill (*pro hac vice* forthcoming)
**GRAYBILL LAW FIRM**
300 4th Street North
PO Box 3586
Great Falls, MT 59403
Telephone: (406) 452-8566
Email: raph@graybilllawfirm.com

*Attorneys for Plaintiff and the Proposed Class and Montana Subclass*